# SUMMONS - CIVIL
JD-CV-1 Rev. 10-09
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. Secs. 3-1 through 3-21, 8-1

**STATE OF CONNECTICUT**
**SUPERIOR COURT**
www.jud.ct.gov

See page 2 for instructions

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

- [ ] "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500.
- [ ] "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more.
- [ ] "X" if claiming other relief in addition to or in lieu of money or damages.

| Address of court clerk where writ and other papers shall be filed (Number, street, town and zip code) (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk (with area code) | Return Date (Must be a Tuesday) |
|---|---|---|
| 300 Grand Street, Waterbury CT 06702 | (203) 591-3300 | June 28, 2011 |

| Judicial District [X] / Housing Session [ ] | G.A. Number: | At (Town in which writ is returnable) (C.G.S. §§ 51-346, 51-349): Waterbury | Case type code (See list on page 2) Major: T  Minor: 90 |

**For the Plaintiff(s) please enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented (Number, street, town and zip code) | Juris number (to be entered by attorney only) |
|---|---|
| Secor, Cassidy & McPartland, PC | 55525 |

| Telephone number (with area code) | Signature of Plaintiff (if self-represented) |
|---|---|
| (203) 757-9261 | |

Number of Plaintiffs: 1     Number of Defendants: 1     [ ] Form JD-CV-2 attached for additional parties

| Parties | Name (Last, First, Middle Initial) and Address of Each party (Number; Street; P.O. Box; Town; State; Zip; Country, if not USA) | |
|---|---|---|
| First Plaintiff | Name: Uzoka, Ike<br>Address: 380 Hitchcock Road, Waterbury CT 06705 | P-01 |
| Additional Plaintiff | Name:<br>Address: | P-02 |
| First Defendant | Name: Community Options, Inc.<br>Address: 562 Watertown Ave., Suite 3, Waterbury, CT 06708 | D-50 |
| Additional Defendant | Name: AGENT FOR SERVICE OF PROCESS: James M. Kelly<br>Address: Commons Hall, 1875 Thomaston Avenue, Waterbury, CT 06704 | D-51 |
| Additional Defendant | Name:<br>Address: | D-52 |
| Additional Defendant | Name:<br>Address: | D-53 |

A TRUE ATTEST COPY
GERALD RAIMO, STATE MARSHAL

## Notice to Each Defendant

1. YOU ARE BEING SUED. This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at www.jud.ct.gov under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at www.jud.ct.gov under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. The Clerk of Court is not allowed to give advice on legal questions.

| Signed (Sign and "X" proper box) | [X] Commissioner of the Superior Court / [ ] Assistant Clerk | Name of Person Signing at Left: Tara L. Shaw | Date signed |
|---|---|---|---|

For Court Use Only
File Date

If this Summons is signed by a Clerk:
a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.
c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint.

| I certify I have read and understand the above: | Signed (Self-Represented Plaintiff) | Date |
|---|---|---|

Name and address of person recognized to prosecute in the amount of $250
Margaret A. Cozza, 41 Church Street, Waterbury, CT 06702

| Signed (Official taking recognizance; "X" proper box) | [ ] Commissioner of the Superior Court / [ ] Assistant Clerk | Date | Docket Number |
|---|---|---|---|

(Page 1 of 2)

RETURN DATE: JUNE 28, 2011 : SUPERIOR COURT

IKE UZOKA : J.D. OF WATERBURY

VS. : AT WATERBURY

COMMUNITY OPTIONS, INC. : MAY 27, 2011

## COMPLAINT

**COUNT ONE: COUNT ONE: Sexual Harassment (Conn. Gen. Stat. § 46a-60(a)(8))**

1. The plaintiff, Ike Uzoka, worked for the defendant, Community Options, Inc.

2. The defendant is a Connecticut business that owns and operates group homes for persons with disabilities.

3. The defendant employs more than fifteen (15) employees.

4. The plaintiff began working for the defendant in 2007, working as a residential trainer in the defendant's Mason Hill facility located in Thomaston, Connecticut.

5. At all relevant times, the plaintiff's usual work shift was the overnight shift and he would generally work from 10:00 P.M. until 10:00 A.M.

6. On or about August 2009, Melanie Gagnon became the Residential Director of the Mason Hill facility.

7. As the Residential Director, Ms. Gagnon was plaintiff's direct supervisor.

8. Within approximately one (1) month of Ms. Gagnon becoming plaintiff's supervisor, she started making inappropriate comments to him, insinuating that she was interested in having a romantic and/or sexual relationship with the plaintiff.

9. Ms. Gagnon would tell the plaintiff that she liked "foreign men" and "men with accents," knowing that the plaintiff's country of origin was Nigeria and he spoke with an accent.

10. Ms. Gagnon would text the plaintiff's personal cell phone with sexual and inappropriate messages.

11. On more than one (1) occasion, Ms. Gagnon would come up to the plaintiff while he was in the medication room and she would rub up against the plaintiff and/or try to rub up against him, which made the plaintiff extremely uncomfortable and embarrassed.

12. During the evenings that the plaintiff worked, sometimes Ms. Gagnon would call the facility to speak to the plaintiff about non-work related matters after she had gone out for the evening and after she had been drinking.

13. During these phone calls, Ms. Gagnon would spend long periods of time talking to the plaintiff, often making inappropriate comments such as telling the plaintiff that she was "all alone" and asking him "to come visit her."

14. During those same conversations, Ms. Gagnon asked the plaintiff on more than one occasion, "don't you want to be my favorite?"

15. In addition, Ms. Gagnon would tell the plaintiff that he was "handsome" and would suggest that they have an affair.

16. The plaintiff was made extremely uncomfortable by Ms. Gagnon's comments, her flirting and the unsolicited attention that she gave him, but the plaintiff feared losing his job if he filed a complaint because Ms. Gagnon was his supervisor.

17. The plaintiff did tell Ms. Gagnon that he was not interested in her and asked her to stop calling the facility and texting his cell phone.

18. Ms. Gagnon was not deterred and her comments and behavior continued throughout the fall and winter of 2009.

19. On or about December 23, 2009, the plaintiff was working his regularly scheduled shift when he received an angry phone call from the wife another employee that he worked with at the time.

20. During that phone call, the caller screamed and threatened that she was going to come down to the facility because the caller stated that Ms. Gagnon was having an affair with the caller's husband.

21. Believing that this incident risked the safety of the residents and staff, the plaintiff decided he had to report this incident to the defendant.

SECOR, CASSIDY & MCPARTLAND, P.C.  •  ATTORNEYS AT LAW
41 CHURCH STREET  •  P. O. BOX 2818  •  WATERBURY, CT 06723-2818  •  JURIS #55525  •  (203) 757-9261

22. The plaintiff contacted Jeanine Greenwood, the defendant's Human Resources Director and reported this incident, asking that his identity be kept anonymous since the plaintiff did not want to get involved in a personal matter between Ms. Gagnon and another co-worker.

23. Within a few weeks of reporting the telephone call, Ms. Gagnon stopped making inappropriate comments to the plaintiff and instead, began to treat the plaintiff unfavorably.

24. Ms. Gagnon began writing the plaintiff up for things that he did not do and to discipline the plaintiff for things that other employees were not disciplined for when they did them.

25. In addition to being singled out and disciplined unfairly by Ms. Gagnon, she stopped offering the plaintiff as many overtime hours, and even misrepresented the availability of overtime hours to the plaintiff.

26. On or about April 2, 2010, the plaintiff could not take any more of Ms. Gagnon targeting him and retaliating against him, so he sent her an email and courtesy copied Ms. Greenwood.

27. In that email, the plaintiff asked whether he was being retaliated against for not giving in to Ms. Gagnon's unwelcome advances.

\\SECOR1\Shared\100240\Complaint.docx        4

SECOR, CASSIDY & MCPARTLAND, P.C.   •   ATTORNEYS AT LAW
41 CHURCH STREET   •   P. O. BOX 2818   •   WATERBURY, CT 06723-2818   •   JURIS #55525   •   (203) 757-9261

28. The plaintiff was immediately placed on administrative leave and instructed to not report to work until Human Resources contacted him pending an investigation of his claim.

29. Ms. Gagnon was not placed on administrative leave during that time or any time thereafter.

30. While out on administrative leave, the defendant contacted the plaintiff and instructed him to meet with Jim Kelly, the defendant's CEO.

31. During that meeting, Mr. Kelly seemed angry with the plaintiff and at first appeared to not believe his allegations that Ms. Gagnon had made unwelcome advances towards the plaintiff and that after those ceased, she began to retaliate against the plaintiff.

32. During that meeting, the plaintiff played for Mr. Kelly, a recording that the plaintiff had in his possession of Ms. Gagnon calling the Mason Hill facility to talk to the plaintiff about non-work related matters.

33. When the meeting ended, Mr. Kelly told the plaintiff that Human Resources would contact him.

34. Human Resources contacted the plaintiff at some point thereafter and informed him that he was being brought back to the same position and that Melanie Gagnon would continue to serve as his direct supervisor.

\\SECOR1\Shared\100240\Complaint.docx    5

SECOR, CASSIDY & MCPARTLAND, P.C.  •  ATTORNEYS AT LAW
41 CHURCH STREET  •  P. O. BOX 2818  •  WATERBURY, CT 06723-2818  •  JURIS #55525  •  (203) 757-9261

35. Human Resources had instructed the plaintiff not to speak about this matter upon his return and that he should immediately contact Human Resources if this issue or any other came up again.

36. The defendant informed the plaintiff that it concluded that he had not engaged in any wrongdoing.

37. Once the plaintiff returned to work in April, co-workers approached him and said that Ms. Gagnon had told them that the plaintiff was not coming back.

38. Once the plaintiff returned to work in April, Ms. Gagnon continued to retaliate against him.

39. Sometime in late June 2010, new staff members began to talk about the investigation and about the plaintiff and Ms. Gagnon.

40. Around that same time, the plaintiff was told by the Residential Supervisor at Mason Hill that Ms. Gagnon was talking about the complaint and investigation and, that Melanie told that Residential Supervisor to be careful around the plaintiff.

41. On or about July 1, 2010, the plaintiff sent an email to Jeanine Greenwood explaining what was going on and how he believed that Ms. Gagnon was improperly talking about the plaintiff and the investigation to their co-workers.

42. After sending the email, Ms. Greenwood contacted the plaintiff and told him that he "should not report to work" and that he was on "administrative leave until the complaint had been investigated."

43. Melanie Gagnon was not placed on administrative leave at any time.

44. While out on administrative leave, the plaintiff was not paid.

45. On or about July 8, 2010, the plaintiff went to a meeting whereupon Ms. Greenwood and Mr. Kelly spoke to the plaintiff about unrelated, alleged disciplinary issues and not the reason that he was placed on administrative leave.

46. Sometime after that meeting, the defendant asked the plaintiff to return to work on July 22, 2010.

47. The defendant never explained the findings of its "investigation" or conclusion to the plaintiff.

48. The plaintiff returned to work on July 22, 2010 and Melanie Gagnon continued to serve as plaintiff's direct supervisor.

49. After the plaintiff returned to work, the retaliation continued, as he was routinely disciplined for things he had not done and/or conduct that other employees were not regularly disciplined for.

50. The daily retaliation caused the plaintiff to suffer emotional distress and anxiety and ultimately, forced the plaintiff to seek other employment.

\\SECOR1\Shared\100240\Complaint.docx   7

SECOR, CASSIDY & MCPARTLAND, P.C.   •   ATTORNEYS AT LAW
41 CHURCH STREET   •   P. O. BOX 2818   •   WATERBURY, CT 06723-2818   •   JURIS #55525   •   (203) 757-9261

51. Through its actions, the defendant has been complicit and a willing participant in a campaign of harassment and retaliation against the plaintiff.

52. The sexually inappropriate atmosphere created, fostered and protected by the defendants, interfered with the plaintiff's work performance and created an intimidating, hostile and offensive work environment in violation of Connecticut General Statutes Section 46a-60(a)(8).

## COUNT TWO:  Sexual Harassment (42 U.S.C. § 2000e)

1.-52. Paragraphs 1 through 52 of Count One are repeated and hereinafter incorporated as Paragraphs 1 through 52 of Count Two.

53. The sexually inappropriate atmosphere created, fostered and protected by the defendant, interfered with the plaintiff's work performance and created an intimidating, hostile and offensive work environment in violation of Title VII of the United States Code, 42 U.S.C. § 2000e.

## COUNT THREE:  Retaliation (Conn. Gen. Stat. § 46a-60(a)(4))

1.-52. Paragraphs 1 through 52 of Count One are repeated and hereinafter incorporated as Paragraphs 1 through 52 of Count Three.

53. The defendant's conduct after learning of the sexual harassment, including suspending the plaintiff and allowing Ms. Gagnon to continue to supervise the plaintiff, constitutes retaliation in violation of Connecticut General Statutes Section 46a-60(a)(4).

## COUNT FOUR: Retaliation (42 U.S.C. § 2000e-3)

1.-52. Paragraphs 1 through 52 of Count One are repeated and hereinafter incorporated as Paragraphs 1 through 52 of Count Four.

53. The defendant's conduct after learning of the sexual harassment, including suspending the plaintiff and allowing Ms. Gagnon to continue to supervise the plaintiff, constitutes retaliation in violation of Title VII of the United States Code, 42 U.S.C. § 2000e-3.

## COUNT FIVE: Gender Discrimination (Conn. Gen. Stat. § 46a-60(a)(1))

1.-52. Paragraphs 1 through 52 of Count One are repeated and hereinafter incorporated as Paragraphs 1 through 52 of Count Five.

53. The defendant willfully and knowingly treated the plaintiff differently than similarly situated female employees, which constitutes discrimination on the basis of sex in violation of Connecticut General Statutes Section 46a-60(a)(1).

## COUNT SIX: Gender Discrimination (42 U.S.C. 2000e-2(a))

1.-52. Paragraphs 1 through 52 of Count One are repeated and hereinafter incorporated as Paragraphs 1 through 52 of Count Six

53. The defendant willfully and knowingly treated the plaintiff differently than similarly situated female employees, which constitutes discrimination on the basis of sex in violation of Title VII of the United States Code, 42 U.S.C. § 2000e-2(a).

WHEREFORE, Plaintiff seeks:

As to COUNT ONE:

    a. Money Damages;

    b. Costs;

As to COUNT TWO:

    a. Money Damages;

    b. Costs;

    c. Attorneys Fees;

    d. Punitive Damages;

As to COUNT THREE:

    a. Money Damages;

    b. Costs;

As to COUNT FOUR:

    a. Money Damages;

    b. Costs;

    c. Attorneys Fees;

    d. Punitive Damages;

As to COUNT FIVE:

SECOR, CASSIDY & MCPARTLAND, P.C. • ATTORNEYS AT LAW
41 CHURCH STREET • P. O. BOX 2818 • WATERBURY, CT 06723-2818 • JURIS #55525 • (203) 757-9261

    a. Money Damages;

    b. Costs;

As to COUNT SIX:

    a. Money Damages;

    b. Costs;

    c. Punitive Damages;

    d. Attorneys Fees;

    e. Punitive Damages.

PLAINTIFF,

By _____
Tara L. Shaw, For:
Secor, Cassidy & McPartland, PC

A TRUE ATTEST COPY

GERALD RAIMO, STATE MARSHAL

\\SECOR1\Shared\100240\Complaint.docx   11

SECOR, CASSIDY & MCPARTLAND, P.C.   •   ATTORNEYS AT LAW
41 CHURCH STREET   •   P. O. BOX 2818   •   WATERBURY, CT 06723-2818   •   JURIS #55525   •   (203) 757-9261

| | |
|---|---|
| RETURN DATE: JUNE 28, 2011 | : SUPERIOR COURT |
| IKE UZOKA | : J.D. OF WATERBURY |
| VS. | : AT WATERBURY |
| COMMUNITY OPTIONS, INC. | : MAY 27, 2011 |

### STATEMENT OF AMOUNT IN DEMAND

The plaintiff claims damages within the jurisdiction of this Court and the amount in demand is more than Fifteen Thousand ($15,000.00) Dollars, exclusive of interest and costs.

PLAINTIFF,

By _____
Tara L. Shaw, For:
Secor, Cassidy & McPartland, PC

A TRUE ATTEST COPY
GERALD AIMO, STATE MARSHAL

\\SECOR1\Shared\100240\Statement of Amt in Demand.docx   1

SECOR, CASSIDY & MCPARTLAND, P.C.  •  ATTORNEYS AT LAW
41 CHURCH STREET  •  P. O. BOX 2818  •  WATERBURY, CT 06723-2818  •  JURIS #55525  •  (203) 757-9261